**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 4:23-cr-10015-Martinez

UNITED STATES OF AMERICA

v.

ZDENEK STRNAD, and
VASIL KHATIASHVILI,

        Defendants.

**UNITED STATES' OMNIBUS SENTENCING MEMORANDUM**

Zdenek Strnad and Vasil Khatiashvili helped their co-defendant, Petr Sutka, operate several labor staffing companies in Key West. Through these labor staffing companies, Strnad and Khatiashvili facilitated the employment in the hospitality industry of hundreds of alien workers who were not authorized to work in the United States. Strnad and Khatiashvili issued paychecks to those workers for their untaxed earnings, causing a tax loss to the United States of more than $1.8 million for 2014 through 2019. Given their respective roles in the scheme, the government respectfully requests that the Court sentence Strnad to 46 months' imprisonment and Khatiashvili to 43 months' imprisonment.

    **I.**    **Factual Summary and Procedural Background**

At various points between January 2014 through October 2019, Strnad and Khatiashvili, and others operated several labor staffing companies, including (i) PSEB Services, Inc., (ii) E.S.F. Services, Inc., and, for Khatiashvili (iii) Expert Services, F.S., Inc.

1

Through these labor staffing companies, Sutka, Strnad, Khatiashvili, and others facilitated the employment in the hospitality industry of non-resident aliens who were not authorized to work in the United States. By obtaining and paying workers through their labor staffing companies, hotels, bars, and restaurants operating in Key West and elsewhere attempted to disclaim responsibility for ensuring that: (1) workers were legally authorized to work in the United States, and (2) federal income and employment taxes were withheld and paid over to the IRS. For their services, these companies charged the hotels, bars, and restaurants a fee, usually in the range of $1 to $1.50 per hour worked by the alien workers.

Often, these labor staffing companies' customers would find a worker that they wanted to hire and then instruct Strnad or Khatiashvili that their labor staffing company had a new employee. Sometimes, the customer was blatant about why the worker had to work through a contractor, such as sending the labor staffing company a copy of the new worker's foreign passport. Other times, Sutka, Strnad, or Khatiashvili found the workers and referred them to the hotels, bars, and restaurants.

Through this business, Strnad and Khatiashvili facilitated the employment of hundreds—if not thousands—of alien workers who were not authorized to work in the United States. Indeed, despite operating these labor staffing businesses, Strnad himself did not have authorization to work in the United States until October 2017. Strnad and Khatiashvili did not conduct any Form I-9 verifications or any other immigration checks for workers, and they knew that the hotels, bars, and restaurants were not doing so either. In short, Strnad and Khatiashvili *knew* that their labor staffing companies were facilitating the employment of alien workers in violation of the law.

Strnad and Khatiashvili also issued paychecks to the workers for their *untaxed* earnings.[1] They did not withhold any payroll taxes from the paychecks and did not pay over the requisite payroll taxes to the IRS. They did not issue IRS Forms W-2, a summary of annual wages and withholdings given to employees, to the workers. If a worker requested, Strnad or Khatiashvili would issue an IRS Form 1099, an annual summary of payments given to independent contractors. However, few workers ever requested or received an IRS Form 1099. The government had only partial bank account records for the many labor staffing companies Sutka, Strnad, and Khatiashvili operated, but the records the government was able to obtain showed a combined payroll of $9,184,803.41 for the period of January 2014 to October 2019 for the companies in which Strnad and Khatiashvili were involved. Accounting solely for the unpaid federal employment taxes (15%) for these tax years, a $9.18 million payroll yields a tax loss to the United States of $1,836,960.68.

In September 2023, Sutka, Strnad, and Khatiashvili were each charged in a one-count Information with a multi-object conspiracy, in violation of 18 U.S.C. § 371, to (1) impede, impair, obstruct, and defeat the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of federal income taxes and employment taxes, (2) encourage and induce aliens to come to, enter, or reside in the United States knowing or in reckless disregard of the fact that such coming to, entry, or residence was or would be in violation of law, in violation

---

[1] The Federal Insurance Contribution Act (FICA) requires employers to withhold Medicare and Social Security taxes from their employees' wages. The Internal Revenue Code also requires employers to withhold federal income taxes from their employees' wages. Employers are supposed to hold these withheld taxes in trust for the United States and are required to pay them over to the IRS on behalf of their employees. Accordingly, these withheld taxes are collectively referred to as "trust fund taxes." In addition to the trust fund taxes, employers are required to pay over an employer portion of FICA taxes.

3

of 8 U.S.C. § 1324(a)(1)(A)(iv); and (3) conceal, harbor, and shield from detection aliens knowing or in reckless disregard of the fact that such aliens had come to, entered, or remained in the United States in violation of law, in violation of 8 U.S.C.§ 1324(a)(1)(A)(iii). Dkt. No. 1. On January 9, 2024, Khatiashvili pleaded guilty to the Information pursuant to a plea agreement. Dkt. Nos. 26-27, 33. Strnad pleaded guilty on January 23, 2024. Dkt. Nos. 24-25, 36.

## II.      Sentencing Guidelines

The Presentence Investigation Reports for Strnad and Khatiashvili aptly summarize the criminal conduct giving rise to their prosecution, as well as the nature and scope of Strnad's and Khatiashvili's conduct in relation to Petr Sutka and others. For the sake of brevity, the government will not restate those facts in this memorandum.

Probation correctly grouped Strnad's offenses and determined that Strnad falls into Criminal History Category I with a Total Offense Level of 28. Dkt. No. 72, ¶ 53. Strnad's Sentencing Guidelines range is thus 78 to 97 months in prison (*id*., ¶ 86), though the Court is capped statutorily at 60 months.

Probation also correctly calculated Khatiashvili as a Total Offense Level of 27 and determined that Khatiashvili falls into Criminal History Category I. Dkt. No. 42. This corresponds to a Sentencing Guidelines range of 70 to 87 months in prison (*id*., ¶ 90), though the Court is capped statutorily at 60 months.

For comparative purposes, Probation determined that Sutka had a Total Offense Level of 28 and fell within Criminal History Category II, corresponding to a Sentencing Guidelines range of 78-97 months. Dkt. 53-1, ¶¶ 57, 93. The Court was similarly limited by statute to a maximum sentence of 60 months for Sutka. The government recommended a sentence of 49 months (Dkt.

No. 59), and the Court sentenced Sutka to a term of 48 months' imprisonment. Dkt. No. 68.

### III.     Appropriate Sentences in this Case

The applicable § 3553(a) factors the government articulated in support of Sutka's 48 month sentence (Dkt. No. 59) are equally availing in the Court's determination of the appropriate sentences for Strnad and Khatiashvili. The United States respectfully submits that, under 18 U.S.C. § 3553(a), a sentence of 46 months in prison is sufficient but not greater than necessary to punish Strnad for his crimes. The government also submits that the Court should sentence Khatiashvili to a term of imprisonment of 43 months.

### Harboring Aliens is Dangerous and Potentially Places Them in Precarious Positions

Strnad and Khatiashvili entered into written contracts and oral agreements with hotels, bars, and restaurants in Key West and elsewhere to provide labor staffing services. These agreements helped their customers attempt to disclaim their responsibility to (1) ensure that workers were legally authorized to work in the United States and (2) withhold, collect, and pay over federal employment taxes to the IRS. Strnad and Khatiashvili facilitated the employment of hundreds and possibly thousands of alien workers knowing or in reckless disregard of the fact that those alien workers were neither legally present in nor authorized to work in the United States.

Key West has long suffered a housing crisis,[2] which has contributed to its labor shortage. When aliens work and live below the radar, they become targets for unscrupulous employers and landlords who prey on their vulnerability. Workers without legal status routinely share cramped living quarters with two or three times the roommates their space would normally accommodate.

---

[2] *See, e.g.*, https://keysweekly.com/42/housing-crisis-part-1-whats-the-problem-in-the-florida-keys.

5

Even those aliens eligible to work in the United States may opt to work for a labor staffing company precisely because the labor staffing companies do not withhold taxes from the workers' gross pay. The Court cannot condone a scheme that makes some vulnerable to predation so others can profit from this nation's immigration problems.

### **Substantial Sentences Will Deter Further Labor Staffing Company Schemes**

Short of congressional action on immigration policy, the only way to break the downward spiraling cycle of illegally employing and housing alien workers is to ensure that the penalty for breaking the law is stiff. "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

As noted above, labor supply is a significant issue in Key West. On the island, a system has developed in which the hospitality industry uses labor staffing companies (also known as contractors or contract companies) such as the ones operated by Strnad and Khatiashvili to counteract labor shortages. The predominant purpose of labor staffing companies like the defendants' was to facilitate the hiring of individuals whom their customers could not hire directly—that is, aliens who were not authorized to work in the United States. Substantial prison sentences are necessary to ensure that others are not tempted by the quick profit or other improper economic advantages to engage in the same criminal conduct as Strnad and Khatiashvili. *See Martin*, 455 F.3d at 1240; U.S.S.G. Ch. 2, Pt. 2, intro. comment. (emphasizing the goal of general deterrence in sentencing for criminal tax offenses).

## IV. Restitution

Strnad and Khatiashvili each agreed to pay restitution for the tax loss to the United States arising from unpaid federal employment taxes for quarters ending March 31, 2014, through December 31, 2019. *See* 18 U.S.C. § 3663(a)(3). Dkt. Nos. 24 and 26, ¶ 11. Based on the unpaid FICA taxes from the wages paid to the workers on the labor staffing companies' payroll for these quarters (and excluding any additional income taxes that should have been collected from the workers), each defendant should be ordered to pay restitution in the total amount of $1,836,960.68. This restitution should be ordered to be paid jointly and severally among Strnad, Khatiashvili, and any conspirators who may be charged in the same scheme.

## CONCLUSION

For all the reasons set forth in this memorandum, the United States submits that an individualized assessment based on the facts presented to the Court warrants a substantial prison sentence for both Strnad and Khatiashvili. Sentences of 46 months and 43 months, respectively, are appropriate.

Respectfully submitted,

MARKENZY LAPOINTE
United States Attorney

_____
Sean Beaty, Senior Litigation Counsel
District Court No. A5501870
Trial Attorneys
U.S. Department of Justice, Tax Division
Christopher Clark, Florida Bar No. 0588040
Senior Litigation Counsel

7

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

_____
Sean Beaty, Senior Litigation Counsel